IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROBERT PARKER,<br><br>               Plaintiff,<br><br>       vs.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>           Defendant. | Case #4:18-cv-00089-PK<br><br><br>MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION |

This Social Security disability appeal is before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final decision of the Commissioner of Social Security. Plaintiff Robert Parker seeks review of the administrative law judge (ALJ) decision denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act. After reviewing the record and considering the parties' positions at oral argument, the Court will affirm the Commissioner's final decision denying Mr. Parker's claim for SSI.

## I.      BACKGROUND

Mr. Parker was 27 years old when he applied for SSI in January 2015. [1] He claimed he was disabled due to bipolar disorder, intellectual disability, anxiety disorder, and personality disorder.

---

[1] Mr. Parker initially alleged that he became disabled in January 2014, but SSI is not payable prior to the month following the application date. *See* 20 C.F.R. § 416.335. As such, the ALJ evaluated whether Mr. Parker was disabled beginning on his application date.

In 2015, consultative psychologist Dr. Hardy observed that Mr. Parker was friendly and cooperative, "but had a significant rigidity in his interpersonal style" and would "offer odd comments at times." Mr. Parker's short-term and long-term memory was adequate, and he could remember and recite three steps of a four-step task that was presented verbally. Thereafter, State agency psychological consultants Dr. Gore and Dr. Cherry reviewed the record to evaluate Mr. Parker's mental abilities. *See* 20 C.F.R. § 416.913a(b)(1) (such "consultants are highly qualified and experts in Social Security disability evaluation.") They opined that Mr. Parker could follow rules; remember simple one- or two-step instructions that were detailed or complex; attend to simple, repetitive tasks; make simple work-related decisions; respond to minor changes in the work routine; make simple plans; set simple goals; and work in the presence of others and accept supervision and feedback; but should not work with the public or in close coordination with others.

Mr. Parker saw physician assistant Dalyn Steed in early 2016. At his first visit, he had an anxious and flat affect, minimal eye contact, unkempt grooming, and abnormal judgment and insight. After a medication adjustment, he reported dramatic improvement—he did not feel down, depressed, or hopeless. He was pleasant, with an appropriate mood and affect.

Mr. Parker saw advanced practice registered nurse (APRN) Brett Robbins in late 2016. Mr. Robbins's examination findings were entirely normal. Mr. Robbins continued to adjust Mr. Parker's mental health medications, and his mental examination findings remained normal through early 2017.

Mr. Parker saw therapist Mr. Pryor between December 2016 and April 2017. At his initial visit, he appeared a bit nervous, anxious, and fidgety, but had a normal affect, normal

memory, normal insight, normal judgment, and normal temperament.  In March 2017, Mr. Pryor noted that Mr. Parker's goal was to be independent, "yet he [did not] want to work."  The next month, Mr. Parker told his therapist that he did not "want to work because he [did not] want the government taking his money to pay off his studen[t] loans."

In April 2017, Mr. Parker underwent a psychological evaluation with Dr. Barney.  He was neatly groomed, pleasant, and cooperative.  He had normal speech, linear and goal-directed thoughts, and "no obvious problems with distractibility."  His "thinking was clear, [and] his attention and concentration were unremarkable"—"[h]e appeared able to focus on the tasks at hand for the entire 3 ½ hour session."  Dr. Barney noted that Mr. Parker "seemed to have some social quirks and oddities," such as laughing at unexpected times and reacting excessively—he diagnosed autism spectrum disorder and generalized anxiety disorder.  He observed that Mr. Parker "appear[ed] to have no desire to work" and "seem[ed] quite content" living with his mother and sister.

Mr. Parker began seeing a new therapist, Roger Lister, in May 2017.  When Mr. Lister asked Mr. Parker what kept him from working, he "stated that he [was] worried that the government will take $350 a month from him due to past due student loans."  In September, he was doing better.  But in November, Mr. Lister opined that Mr. Parker experienced marked impairment in most areas of workplace mental functioning; would be off task 20% or more of a workday; would miss four days or more per month; and would be less than 50% as efficient as an average worker.

At the November 2017 hearing before the ALJ, Mr. Parker testified that he could not work because he had "trouble being around people" and "often g[o]t confused."  He claimed that

he could not "do anything for more than just a few minutes of time before having to either sit down, stand up, or do something that t[ook] [his] attention away."

Psychologist Dr. Hatch examined Mr. Parker at the ALJ's request in December 2017. Mr. Parker told Dr. Hatch that he spent most or all of his time working on computers or playing games on them—he said he spent 12 to 15 hours each day playing video games. Dr. Hatch's examination findings were mixed: Mr. Parker was temperamental, irritable, "a bit naïve," and disheveled; displayed inconsistent eye contact; and struggled to recall information. Yet he was also very cooperative, kept up with the pace of the assessment, and could carry out requests and comprehend simple and somewhat more complex verbal instructions.

The ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a)(4). As relevant here, the ALJ found that Mr. Parker had impairments that qualified as "severe" under the agency's regulations (bipolar disorder, anxiety disorder, and autism spectrum disorder), but that those impairments did not meet or medically equal a per se disabling impairment from 20 C.F.R. part 404, subpart P, appendix 1 (the listings). Between steps three and four, the ALJ found that Mr. Parker had the residual functional capacity (RFC) to perform work at all exertional levels, but with non-exertional limitations to "simple tasks typical of unskilled occupations with no production rate pace work," "only occasional interaction with coworkers[,] and no interaction with the public." At step five, the ALJ found—consistent with a vocational expert's testimony—that this RFC would allow Mr. Parker to perform other work existing in significant numbers in the national economy). The ALJ thus found at step five that Mr. Parker was not disabled. *See* 20 C.F.R. § 416.920(a)(4)(v).

## II.     ARGUMENTS ON APPEAL

On appeal, Mr. Parker argues that the ALJ did not provide good reasons to discount the opinion of his therapist, Mr. Lister; did not sufficiently consider the opinions of examining psychologist Dr. Hatch; made inconsistent findings at step three and within the RFC assessment; did not sufficiently address his difficulty with social interaction; and should not have discounted his reported symptoms based on his statement that he did not want to work.  The Court ultimately finds these arguments unpersuasive.

## III.     STANDARD OF REVIEW

As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)).  The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). Under this deferential standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).  The Court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157.  If the evidence is susceptible to multiple interpretations, the Court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation omitted).  That is, in reviewing

under sentence four of 42 U.S.C. § 405(g), the Court must affirm if the ALJ's decision is

supported by substantial evidence and the correct legal standards were used, even if the Court

believes the evidence is "equivocal." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

## IV.    DISCUSSION

### A.    The ALJ reasonably evaluated the opinions

As in many Social Security disability appeals, the ALJ here was presented with a number

of disparate opinions relevant to Mr. Parker's abilities and limitations.  The ALJ as factfinder

was tasked with resolving the conflicts between these opinions.  *See* 20 C.F.R. § 416.927;

*Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon

situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict.")

Social Security regulations lay out certain factors that an ALJ must consider when

evaluating a medical opinion.  *See* 20 C.F.R. § 416.927(c).[2]  While an ALJ is required to

consider these factors, he is not required to "apply expressly each of the six relevant factors in

deciding what weight to give a medical opinion," *Oldham v. Astrue*, 509 F.3d 1254, 1258

(10th Cir. 2007).  Rather, an ALJ need only provide "good reasons in his decision for the weight

he gave to the" opinions.  *Id.* (citation omitted).  The Court finds that the ALJ provided those

requisite good reasons here.

Because Mr. Lister was a therapist, the Court need only be able to follow the ALJ's

reasoning for discounting his opinion.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163

---

[2] The agency has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules).  Mr. Parker filed his claim in 2015, so the Court's review of the ALJ's consideration of the opinions is under 20 C.F.R. § 416.927, not 20 C.F.R. § 416.920c.

(10th Cir. 2012) ("In the case of a nonacceptable medical source . . . the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" (citation omitted)).  The ALJ gave little weight to the opinion because it was inconsistent with the nature and scope of Mr. Parker's treatment; it was inconsistent with objective findings; and it was inconsistent with the State agency psychologists' opinions.

The Court can follow the ALJ's reasoning for discounting Mr. Lister's opinion.  As the ALJ previously discussed, Mr. Parker's treatment had consisted entirely of therapy and psychotropic medication; there were no records of inpatient psychiatric treatment or emergency medical visits, records that one might expect given Mr. Lister's opinion that Mr. Parker experienced marked limitations managing his psychological-based symptoms, being aware of normal hazards, and taking appropriate precautions.  The ALJ cited APRN Mr. Robbins's repeatedly normal findings that Mr. Parker was cooperative and well-oriented, with no mood swings, good insight, and intact memory and judgment.  And the ALJ discounted Mr. Lister's opinion because it was inconsistent with the medical opinions of two acceptable medical sources, psychologists Dr. Gore and Dr. Cherry.  "This alone justifie[d] reliance" on the psychologists' opinions over the opinion of Mr. Lister.  *Keyes-Zachary*, 695 F.3d at 1164 (citation omitted).

Turning to Dr. Hatch's opinion, the Court finds no error in the ALJ's determination that it was due some weight, but that the portion of the opinion that Mr. Parker had a limited ability to live and work independently was due less weight.  The ALJ found that "Dr. Hatch's opinion suggests he relied very heavily on [Mr. Parker's] subjective reports of symptoms, as opposed to considering not only alleged symptoms but also the presence or absence of objectively abnormal clinical and laboratory findings."  While opinions related to an individual's mental impairment

must largely be based on the individual's self-reported symptoms, an ALJ may still discount a psychologist or psychiatrist's opinion that appears premised solely on reported symptoms. *See Paulsen v. Colvin*, 665 F. App'x 660, 665 (10th Cir. 2016) (unpublished) ("When, as here, the only evidence of migraines is self-reporting, the ALJ can also consider the claimant's lack of credibility; and as discussed above, the ALJ found that Ms. Paulsen's credibility was doubtful . . . Under these circumstances, the ALJ did not err in affording no weight to Dr. Hess's statement.").

The ALJ also found that Dr. Hatch's opinion was inconsistent with other medical evidence. The ALJ cited record evidence showing that Mr. Parker had high functioning autism and was very good at activities like computers and video games. The ALJ reasonably found that such evidence was inconsistent with Dr. Hatch's opinion that Mr. Parker had a limited ability to live and work independently.

**B.      The ALJ reasonably found that Mr. Parker's reported symptoms were inconsistent with other evidence**

The RFC assessment must address the claimant's supported symptoms. *See* 20 C.F.R. § 416.929; Social Security Ruling (SSR)16-3p, 2017 WL 5180304; *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").[3] Here, the ALJ reasonably found that Mr. Parker's reported symptoms were inconsistent with other evidence.

_____

[3] Effective March 28, 2016, SSR 16-3p eliminated the term *credibility* from the agency's sub-regulatory policy. 2017 WL 5180304. However, the underlying regulations governing symptom analysis (20 C.F.R. §§ 404.1529 and 416.929) have not changed, and cases interpreting those regulations remain relevant.

The ALJ contrasted Mr. Parker's reports of disabling symptoms with objective medical evidence. The ALJ discussed, for example, treating APRN Mr. Robbins's repeated findings between September 2016 and January 2017 that Mr. Parker was cooperative and well-oriented, with no mood swings or psychotic features, good insight, and intact memory and judgment. The ALJ found that Mr. Parker's treatment had resulted in an improvement in his symptoms, contrasting his 2016 display of an anxious and flat affect, minimal eye contact, unkempt grooming, and abnormal insight and judgment with Mr. Parker's appearance later that year and into 2017, after his medications were adjusted, showing entirely normal mental status.

The ALJ found that Mr. Parker's daily activities were not as limited as one might expect, given his complaints. Specifically, the ALJ contrasted Mr. Parker's reports of extremely limited attention and concentration with his self-reported ability to play video games for at least eight to 10 hours every day. As a division of this Court found in *Todd v. Colvin*, No. 1:12-CV00234-CW-EJF, 2014 WL 1329529, at *9 (D. Utah Mar. 31, 2014) (unpublished), an ALJ may reasonably discount a claimant's reports of severe limitations in concentration due to the ability to play video games.[4]

The ALJ contrasted Mr. Parker's reported inability to stay on task and get along with others with his educational history, namely his ability to graduate high school and obtain a college associate's degree. The ALJ recognized that Mr. Parker had not reported any difficulties

---

[4] Although the "sporadic performance" of activities like performing a few household tasks or playing video games "does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987), an ALJ may consider such activities when, as here, they undercut a claimant's reported symptoms, *see Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990).

getting along with his professors or classmates. The ALJ also discussed Mr. Parker's testimony that, while his professors gave him extra time to complete his assignments, he was nevertheless able to timely complete his assignments and earn college credits to attain an associate's degree.

Finally, the ALJ questioned whether Mr. Parker could not work due to his impairments or because he did not *want* to work. Among the "other factors" that an ALJ may consider is whether a claimant has a motive to misrepresent his disability in order to obtain benefits. *See Wilson*, 602 F.3d at 1146 (finding that the ALJ could consider the claimant's testimony that "one of the reasons she wanted to obtain disability benefits was that she wanted to be able to spend time taking care of her youngest son who suffered from night terrors" as a motive for misrepresentation of her disability). Here, Mr. Parker repeatedly reported that he did not want to work because he did not want the government to garnish his wages in order to recoup his past-due student loan debt.

The Court finds that the ALJ tied his findings related to Mr. Parker's reported symptoms to specific evidence in the record. The Court concludes that the ALJ reasonably found that those symptoms were inconsistent with other evidence.

## C.     The ALJ's RFC findings were consistent with his step-three findings

At step three, the agency utilizes the psychiatric review technique (PRT) (also known as the "special technique") to determine whether specified functional restrictions, the "paragraph B" criteria, are present. *See* 20 C.F.R. § 416.920a (describing the special technique). Here, the ALJ found that Mr. Parker had no limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in regard to concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing himself. These

ratings of the paragraph B criteria were by definition *not* an assessment of Mr. Parker's RFC. SSR 96-8p, 1996 WL 374184, at *4 ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

Mr. Parker argues that the ALJ erred when he found that he had no limitations in the paragraph B criterion of understanding, remembering, or applying information. But the ALJ explained why he found that Mr. Parker had no limitations in this area. Furthermore, any error would be harmless because, without at least marked impairment in two or more (or extreme impairment in one) of the paragraph B criteria, Mr. Parker could not meet a listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04B, 12.05B, 12.06B, 12.08B, 12.10B. Thus, even if the ALJ should have found that Mr. Parker experienced mild, moderate, or even marked limitations in understanding, remembering, or applying information, Mr. Parker would not have met a mental impairment listing. *See Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. 2015) (unpublished) ("Because [the claimant] has not satisfied all of the Listing's criteria, she cannot prevail at step three as a matter of law."). And to the extent that the ALJ's RFC limitation to simple work was inconsistent with the ALJ's step-three finding of no impairment in understanding, remembering, or applying information, any error was to Mr. Parker's benefit—the ALJ found his RFC *more* limited than the paragraph B findings would suggest.

Likewise, Mr. Parker's argument that the ALJ was obligated to include limitations on his interactions with supervisors after finding moderate impairment in the paragraph B criterion of interacting with others is unavailing. Mr. Parker presents his layperson perspective that he required limitations on his interaction with supervisors. Yet his layperson perspective cannot

prevail over the medical opinions of Dr. Gore and Dr. Cherry that he could accept supervision and feedback regarding his performance. The ALJ reasonably relied on these medical opinions when he assessed Mr. Parker's RFC. The Court may not re-weigh the evidence considered by the ALJ and determine that it supported additional functional limitations. *See Lax*, 489 F.3d at 1084 (on substantial evidence review, the court does not re-weigh the evidence or substitute its judgment for that of the Commissioner).

## V.     CONCLUSION

The Court recognizes that the record contains evidence suggesting that Mr. Parker experienced greater functional limitations, as well as evidence suggesting lesser functional limitations. Such is the nature of a Social Security disability appeal. In such circumstances, the Tenth Circuit has repeatedly advised district courts to defer to the institutional judgment of the agency factfinder, the ALJ. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record contains support for both the notion that Mr. Allman has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so." (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that the ALJ is entitled to resolve any

conflicts in the record)).  Given the equivocal nature of the evidence in this case, and the

deferential standard of review, the Court hereby AFFIRMS the decision below.


      Dated this 2nd day of October,  2019.

PAUL KOHLER
United States Magistrate Judge